**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS E. MILLER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 10-1544** |
| | ) **Chief Judge Gary L. Lancaster** |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Gary L. Lancaster
Chief Judge                                    February _3_, 2012

**I.    Introduction**

Plaintiff Thomas E. Miller ("Miller") brings this action

pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of

the final decision of the Commissioner of Social Security

("Commissioner") denying his application for supplemental

security income ("SSI") benefits under Title XVI of the Social

Security Act ("Act") [42 U.S.C. §§ 1381-1383f].  For the reasons

that follow, the Commissioner's decision will be affirmed.

**II.   Procedural History**

Miller received SSI benefits prior to July 1, 2006, when he

began to serve a prison sentence for theft.  (R. at 13).  His

benefits were terminated after the commencement of his

1

incarceration.[1]  (R. at 13).  Miller was released from prison on November 14, 2007.  (R. at 33).  He protectively filed a new application for SSI benefits on November 16, 2007, alleging that he had become disabled on January 1, 2003.  (R. at 166, 195). The Pennsylvania Bureau of Disability Determination ("Bureau") denied the application on June 9, 2008.  (R. at 89).  Miller responded on June 30, 2008, by filing a timely request for an administrative hearing.  (R. at 104-105).

On July 14, 2009, Miller appeared for a hearing in Morgantown, West Virginia, before Administrative Law Judge J.E. Sullivan (the "ALJ").  (R. at 77).  The ALJ continued the case after learning that Miller's treating healthcare providers had failed to supply medical records that were of central importance to his claim.  (R. at 80-85).  A second hearing was held before the ALJ on October 29, 2009.  (R. at 26).  Miller, who was represented by counsel, appeared and testified at the hearing. (R. at 36-68).  Larry Bell ("Bell"), an impartial vocational expert, also testified at the hearing.  (R. at 68-74).  In a decision dated November 10, 2009, the ALJ determined that Miller was not "disabled" within the meaning of the Act.  (R. at 10-25).

---

[1] Title XVI provides that "no person shall be an eligible individual . . . with respect to any month if throughout such month he is an inmate of a public institution."  42 U.S.C. § 1382(e)(1)(A).

On January 4, 2010, Miller sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 6-7). The Appeals Council denied the request for review on October 5, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 1). Miller commenced this action on November 19, 2010, seeking judicial review of the Commissioner's decision. (ECF Nos. 1 & 5). Miller and the Commissioner filed motions for summary judgment on March 18, 2011, and April 20, 2011, respectively. (ECF Nos. 10 & 12). These motions are the subject of this memorandum opinion.

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience,

4

engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or

mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the

6

administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of
Appeals for the Third Circuit has recognized the applicability
of this rule in the Social Security disability context.
*Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).
Thus, the Court's review is limited to the four corners of the
ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491
(W.D.Pa. 2005).

## IV.  The ALJ's Decision

In her decision, the ALJ declined to determine whether
Miller had engaged in substantial gainful activity subsequent to
the date of his application, since the record was inconclusive
as to that issue. (R. at 15). Miller was found to be suffering
from a seizure disorder, a cervical disc bulge (with neck pain),
non-insulin dependent diabetes, hypertension, a bipolar
disorder, a personality disorder, polysubstance
dependence/abuse, hepatitis, left cubital tunnel syndrome,
headaches, and a history of injuries to his right knee and back.
(R. at 15-16). Although his hepatitis, left cubital tunnel
syndrome, headaches, and knee and back impairments were deemed
to be "non-severe," his remaining impairments were deemed to be
"severe" within the meaning of 20 C.F.R. §§ 416.920(a)(4)(ii)
and 416.920(c). (R. at 15-16). The ALJ concluded that these

7

impairments did not meet or medically equal an impairment listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of

Impairments" or, with respect to a single impairment, a "Listed

Impairment" or "Listing"). (R. at 16-17).

In accordance with 20 C.F.R. § 416.945, the ALJ assessed

Miller's residual functional capacity as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform unskilled medium
> exertional work activity as defined in 20 CFR
> 416.967(c) and that: Avoids all exposure to hazards
> (e.g. dangerous machinery, unprotected heights, etc);
> is performed in a low stress, stable work environment
> with no more than occasional changes in the work
> setting (no fast paced production or strict production
> quotas) and only occasional work related decision
> making; requires only simple (e.g., 1- to 2- step),
> routine and repetitive tasks; with no interaction with
> the general public, only occasional interaction with
> supervisors and co-workers, and with work tasks that
> would preferably be independently performed with only
> occasional/or [sic] infrequent tandem tasks performed
> with co-workers.

(R. at 17-18). Miller had "past relevant work"[2] experience as a

"long haul truck driver." (R. at 69). Bell classified that

position as a "semi-skilled"[3] job at the "medium"[4] level of

---

[2] "Past relevant work" is defined as "substantial gainful activity" performed
by a claimant within the previous fifteen years that lasted long enough for
him or her to learn how to do it. 20 C.F.R. § 416.960(b)(1). The
Commissioner has promulgated comprehensive regulations governing the
determination as to whether a claimant's work activity constitutes
"substantial gainful activity." 20 C.F.R. §§ 416.971-416.976.
[3] "Semi-skilled work is work which needs some skills but does not require doing
the more complex work duties. Semi-skilled jobs may require alertness and
close attention to watching machine processes; or inspecting, testing or
otherwise looking for irregularities; or tending or guarding equipment,
property, materials, or persons against loss, damage or injury; or other

8

exertion. (R. at 69). Since Miller was deemed to be capable of performing only "unskilled"[5] work, it was determined that he could not return to his past relevant work. (R. at 23).

Miller was born on February 19, 1968, making him thirty-nine years old on the date of his application and forty-one years old on the date of the ALJ's decision. (R. at 23, 48). He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. § 416.963(c). He had a high school education and an ability to communicate in English. (R. at 48, 199, 205); 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Miller could work as a kitchen attendant or laundry worker. (R. at 24). Bell's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[6] (R. at 71).

---

types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. § 416.968(b).
[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).
[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 416.968(a).
[6] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she

9

## V.  Discussion

Miller maintains that the ALJ erred in determining that his hepatitis, left cubital tunnel syndrome, back pain and knee pain were not "severe" impairments.[7]  (ECF No. 11 at 18-19).  In order to constitute a "severe" impairment, a medical condition must "significantly limit [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.921(a).  In addition, the impairment must last (or be expected to last) for a continuous period of at least twelve months.  20 C.F.R. § 416.922(a).  The ALJ concluded that Miller's left cubital tunnel syndrome had not lasted long enough to satisfy the twelve-month durational requirement.  (R. at 20-21).  She further determined that Miller's hepatitis, back pain and knee pain had not resulted in significant functional limitations.  (R. at 16).

The second step of the sequential evaluation process has been characterized as "a *de minimis* screening device" designed to quickly "dispose of groundless claims."  *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003).  For this reason, the Commissioner's invocation of the second step *as a basis for the denial of benefits* is "certain to

---

can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).
[7] Miller lists "neck pain" among the impairments found to be "non-severe." (ECF No. 11 at 18).  That impairment, however, was actually found to be "severe" in relation to Miller's cervical disc bulge.  (R. at 15).

raise a judicial eyebrow." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d Cir. 2004). In this case, however, Miller's claim was not *denied* at the second step. Since some of his impairments were found to be "severe," his claim proceeded through the remaining steps of the analysis. (R. at 15-25). In this respect, any error allegedly made by the ALJ at the second step of the process was inconsequential and harmless. *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

Under the Commissioner's regulations, an assessment of a claimant's residual functional capacity must account for all "severe" and "non-severe" impairments resulting in work-related limitations. 20 C.F.R. § 416.945(a)(2). The ALJ expressly recognized her duty to consider Miller's "non-severe" impairments "in combination with [his] other impairments." (R. at 16). Dr. Nghia Van Tran, a non-examining medical consultant, opined on May 28, 2008, that Miller was capable of performing a range of "medium" work activities involving no exposure to workplace hazards. (R. at 318-324). The ALJ incorporated these limitations into her residual functional capacity assessment. (R. at 17-18). She specifically relied on Dr. Van Tran's opinion to support her findings concerning Miller's physical limitations. (R. at 21). Miller points to nothing in the

record which contradicts Dr. Van Tran's opinion or undermines the ALJ's findings.

Dr. Michael J. Rutigliano, a surgeon affiliated with the University of Pittsburgh Medical Center ("UPMC"), evaluated Miller on April 8, 2009. (R. at 328). After completing his examination, Dr. Rutigliano suspected that Miller was suffering from left cubital tunnel syndrome. (R. at 329). This diagnosis was confirmed during electromyography studies conducted on April 29, 2009. (R. at 325-326). After performing the study, Dr. Bill Hennessey predicted that surgical intervention would prevent Miller's injury from advancing and "help quite a bit," but that it would not completely eliminate the underlying impairment. (R. at 326). Miller chose to proceed with "a left cubital ligament release." (R. at 327). His sutures were removed on May 18, 2009. (R. at 330). Miller failed to appear for a follow-up appointment scheduled for June 4, 2009. (R. at 330).

In determining that Miller's left cubital tunnel syndrome was a "non-severe" impairment, the ALJ stated that the record was devoid of evidence suggesting that Miller's surgery had been unsuccessful, or that the impairment had lasted for the requisite twelve-month period. (R. at 21). Miller challenges the ALJ's conclusion by relying on Dr. Hennessey's prediction that surgery would not completely heal the impairment. (ECF No.

11 at 18). The problem with this argument is that it begs the question. Where an impairment is cured before the passage of twelve months, the Commissioner is not obligated to retroactively consider whether that impairment had been "expected to last" for a period of twelve months at the time of its diagnosis. *Barnhart v. Walton*, 535 U.S. 212, 222-225, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Even if the impairment remained with Miller after the completion of his surgery, it was still incumbent upon him to demonstrate the existence of functional limitations resulting from that impairment. *Baker v. Astrue*, 617 F.Supp.2d 498, 510 (E.D.Ky. 2008). The record indicates that Miller failed to appear for his follow-up appointment on June 4, 2009. (R. at 330). Miller points to nothing in the record which suggests that his left cubital tunnel syndrome resulted in functional limitations subsequent to that date. He was afforded an adequate opportunity to submit the necessary evidence. Indeed, the ALJ postponed Miller's hearing precisely because she wanted to see, *inter alia*, medical records pertaining to his surgery. (R. at 83). In light of Miller's failure to supply evidence of functional limitations *after* the surgery had been completed, the ALJ was not required to speculate about the existence of such limitations based solely on the prediction made by Dr. Hennessey *before* the completion of the surgery. *Bowen v. Yuckert*, 482 U.S. 137, 146,

13

n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)("It is not
unreasonable to require the claimant, who is in a better
position to provide information about his own medical condition,
to do so."). Given that Miller did not seek follow-up treatment
after his sutures were removed, the ALJ was entitled to infer
that no remaining functional limitations were present. (R. at
21).

Miller's second argument pertains to the issue of *per se*
disability at the third step of the sequential evaluation
process. (ECF No. 11 at 19-20). The Listing of Impairments
describes impairments which render a claimant *per se* disabled
without regard to his or her age, education, or past work
experience. *Bowen*, 482 U.S. at 153; *Knepp v. Apfel*, 204 F.3d
78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled,
a claimant must demonstrate that his or her impairment (or
combination of impairments) either "matches" a Listing or is
"equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521,
530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment
"matches" a Listing only if it satisfies *all* of the relevant
medical criteria. *Id.* at 530. An impairment is "equivalent" to
a Listed Impairment only if it is supported by medical findings
equal in severity to *all* of the criteria applicable to the most
similar Listing. *Id.* at 531. The claimant bears the burden of
presenting evidence to support his or her allegation of *per se*

14

disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Miller contends that the ALJ erred in determining that his mental impairments did not meet or medically equal Listings 12.04 and 12.06. (ECF No. 11 at 19-20). Although he fails to specify the precise basis for his position, his argument appears to relate to the "B" criteria of those Listings. In order to satisfy the "B" criteria, Miller must establish that his mental impairments result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; and/or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.04 and 12.06. The ALJ concluded that Miller had only a "mild" restriction of activities of daily living, "moderate" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence or pace. (R. at 16). She also observed that he had experienced no extended episodes of decompensation. (R. at 16-17).

Dr. Dennis W. Kreinbrook performed a consultative psychological evaluation of Miller on April 3, 2008. (R. at 292). In a written report completed subsequent to the evaluation, Dr. Kreinbrook indicated that Miller had "marked"

15

limitations pertaining to his abilities to respond appropriately
to work pressures in a usual work setting, understand, remember
and carry out detailed instructions, and interact appropriately
with supervisors and co-workers. (R. at 298). Miller relies on
Dr. Kreinbrook's findings as evidence supporting a finding of
*per se* disability. (ECF No. 11 at 19-20). The specific
functional limitations identified by Dr. Kreinbrook, however,
cannot be equated with "marked" limitations in the broader areas
of functioning applicable to the "B" criteria of Listings 12.04
and 12.06. *Pabon v. Barnhart*, 273 F.Supp.2d 506, 515-516
(S.D.N.Y. 2003). The "marked" limitations found by Dr.
Kreinbrook were more relevant to the assessment of Miller's
residual functional capacity than they were to the issue of *per
se* disability. 20 C.F.R. § 416.945(c).

Dr. Michelle Santilli, a non-examining psychological
consultant, opined on April 29, 2008, that Miller had a "mild"
restriction of activities of daily living, "moderate"
difficulties in maintaining social functioning, and "moderate"
difficulties in maintaining concentration, persistence or pace.
(R. at 314). Dr. Santilli further indicated that Miller had
experienced no extended episodes of decompensation. (R. at
314). The ALJ accorded "great weight" to Dr. Santilli's opinion
in determining that Miller was not *per se* disabled. (R. at 16-
17, 23). The Court also notes that Dr. Gina Canada, a treating

physician, reported on January 4, 2008, that she had no knowledge of limitations relating to Miller's activities of daily living and maintenance of concentration, persistence or pace. (R. at 282-283). Dr. Canada apparently believed that only Miller's social functioning was limited. (R. at 283). In the portion of her decision explaining why she was giving "less weight" to Dr. Kreinbrook's opinion than she was giving to Dr. Santilli's opinion, the ALJ pointed out that none of Miller's treating physicians had offered an opinion supporting the degree of limitation reflected in Dr. Kreinbrook's examination report. (R. at 21-22). The ALJ acted within her authority in choosing to accord more weight to the opinions expressed by Dr. Santilli and Dr. Canada than to the opinion expressed by Dr. Kreinbrook. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009)(recognizing an administrative law judge's freedom "to choose the medical opinion of one doctor over that of another").

On April 19, 2009, Miller was voluntarily admitted to Highlands Hospital in Connellsville, Pennsylvania, pursuant to 50 PA. STAT. § 7201. (R. at 367-374). He sought inpatient psychiatric treatment after experiencing both "suicidal ideation" and "homicidal ideation towards his stepmother." (R. at 367). Miller was discharged on April 21, 2009, after assuring the attending medical personnel that he would not hurt

himself or his stepmother.[8]  (R. at 373).  Because Miller was

only hospitalized for a few days, the ALJ determined that his

period of inpatient treatment had not constituted an *extended*

episode of decompensation.  (R. at 17).  This conclusion was

consistent with the Commissioner's regulations, which indicate

that a period of decompensation must last for at least two weeks

in order to constitute an "extended" episode of decompensation.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(C)(4).

Furthermore, a claimant must experience the equivalent of three

two-week episodes within the span of one year in order to

satisfy the fourth "B" criterion.  *Id.*  Consequently, the Court

has no reason to disturb the ALJ's finding at the third step of

the sequential evaluation process.

Miller asserts that the ALJ placed too much weight on his

"sporadic activities of daily living" in determining his

residual functional capacity.  (ECF No. 11 at 20-21).  The Court

acknowledges that the Commissioner may not reject medical

evidence of disability solely because a claimant can take care

of his or her "personal needs" and perform "limited household

chores."  *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.

---

[8] The record of Miller's hospitalization states that "[h]e was requesting to
leave" at the time of his discharge.  (R. at 373).  It is not clear whether
the attending medical personnel independently determined that Miller was no
longer in need of inpatient treatment, or whether he left the facility
against medical advice pursuant to 50 PA. STAT. § 7206.  In any event, it was
noted that Miller posed "no apparent danger to himself or others upon
discharge."  (R. at 373).  Therefore, he did not meet the criteria for
involuntary treatment.  50 PA. STAT. §§ 7301-7302.

1988). Nevertheless, it was permissible for the ALJ to consider Miller's daily activities in determining the extent to which his subjective complaints were credible.

Dr. Charles Franchino evaluated Miller on January 25, 2008. (R. at 289-291). During the evaluation, Miller expressed an interest in going to Florida in February 2008 for the Daytona 500. (R. at 290). Although the terms of his parole precluded him from leaving Pennsylvania, he was apparently hoping to get permission to travel to Florida "for a brief period" of time. (R. at 290). In addition, Miller met his fiancé while meeting with friends at a "bar club." (R. at 62). He later testified that he generally stayed inside of his mother's house and frequently locked himself inside of her basement. (R. at 36-37). The ALJ relied on Miller's social interactions with friends and desire to travel to Florida in determining that his testimony had not been fully credible. (R. at 18-19, 21). Because Miller's "activities of daily living" appeared to be in direct conflict with his alleged need to isolate himself within the confines of his mother's house or basement, it was reasonable for the ALJ to place significant reliance on those activities for the purpose of evaluating the credibility of his subjective complaints. 20 C.F.R. § 416.929(a).

On April 25, 2007, Miller sought treatment in prison after injuring his hand during a basketball game. (R. at 260). The

ALJ made reference to Miller's ability to play basketball in determining that he had only "minimal physical limitations." (R. at 20). An individual's participation in a basketball game ordinarily entails a degree of physical exertion that is not usually associated with the performance of "medium" work activities. Therefore, the ALJ did not act unreasonably in relying on Miller's athletic participation as a reason for finding that his physical limitations were not disabling. (R. at 20).

The ALJ generally accounted for the "marked" limitations identified by Dr. Kreinbrook by limiting Miller to "low stress" work involving only "simple" tasks and "occasional interaction with supervisors and co-workers." (R. at 17-18). Perhaps that is why Miller contests only the ALJ's reliance on his daily activities instead of challenging her residual functional capacity finding in a more general sense. (ECF No. 11 at 20-21). To the extent that Miller believes that the limitations found by Dr. Kreinbrook were more severe than those reflected in the ALJ's residual functional capacity determination (and corresponding hypothetical questions to Bell), it suffices to say that the ALJ was free to credit the opinion of Dr. Santilli over that of Dr. Kreinbrook. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Dr. Santilli found Miller to be "markedly" limited only in his ability to interact appropriately with

members of the general public. (R. at 300-301). Since the
positions described in Bell's testimony involved no interaction
with members of the general public, the ALJ's decision denying
Miller's application for benefits was well within the bounds of
Dr. Santilli's expert opinion. (R. at 70-71).

Miller testified that he had worked in a kitchen and
supervised maintenance personnel during the course of his
incarceration. (R. at 53-55). The psychologists who evaluated
Miller before his release from prison recommended that he pursue
a full-time job. (R. at 248). The record of Miller's
hospitalization indicates that he was working at a dog kennel
operated by his father in April 2009. (R. at 372). In her
decision, the ALJ did not definitively determine whether Miller
had engaged in substantial gainful activity subsequent to the
date of his application. (R. at 15). Even when a claimant's
work activity does not amount to substantial gainful activity,
it may be probative of his or her ability to maintain a full-
time job. 20 C.F.R. § 416.971. Therefore, it was permissible
for the ALJ to rely on documentary and testimonial evidence of
Miller's work activity in determining that he could work as a
kitchen attendant or laundry worker on a full-time basis.[9] (R.
at 19, 24).

---

[9] Since Miller sought SSI benefits for the period of time immediately
postdating his release from prison, the duties that he performed during the
course of his incarceration constituted probative evidence of his ability to

21

## VI. Conclusion

The final decision of the Commissioner is "supported by substantial evidence" and will be affirmed. 42 U.S.C. § 405(g). The motion for summary judgment filed by Miller (*ECF No. 10*) will be denied, and the motion for summary judgment filed by the Commissioner (*ECF No. 12*) will be granted.

AND NOW, this $\underline{3 \wedge C}$ day of February, 2012, IT IS HEREBY ORDERED that the Plaintiff's motion for summary judgment (*ECF No. 10*) is **DENIED**, that the Defendant's motion for summary judgment (*ECF No. 12*) is **GRANTED**, and that the final decision of the Commissioner of Social Security is **AFFIRMED**.

BY THE COURT:

Gary L. Lancaster
Chief United States District Judge

cc: All counsel of record

---

engage in work-related activities during the period of time commencing on the date of his application. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1381-1382 (Fed.Cir. 2009).